The next case is the United States of America v. Bryan Mateo. Sydney Strickland is here for Appellant Mateo. Tyler Mann is here for the United States. And once you're ready, Mr. Strickland, you may begin. Take your time. Good morning. May it please the Court. I apologize. I'm getting over a cold, so I'm sorry if I have to take a second to cough. But, Your Honors, Mr. Archila Mateo's convictions must be vacated here because the case agents were permitted to give improper opinion testimony that interpreted the evidence and invaded the province of the jury. And this was plain error under this Court's decision in Hawkins. In Hawkins, this Court held that the case agent provided improper testimony by summarizing evidence, interpreting plain language, and drawing inferences from the evidence that the jury should have been left to draw or not draw for itself. So there was no contemporaneous objection to the testimony at all, right? That's correct, Your Honor. So this will be reviewed for plain error, just as the evidence in Hawkins was. That's also a plain error case. And there, the Court found that the error was plain already, and now that we have the case, I think it's extremely clear that the error is at least clear. I know there are other components to plain error review, but under Hawkins, the error here is clear. Yeah, I remember Hawkins really well, and my assessment of Hawkins was that the problem was that you had a case agent on the stand for, you know, basically the entire case. I mean, I think we said something like, you know, 200 pages of the trial transcript. It was like a 600-page trial, and 200 pages was just this case agent. I mean, we don't have that here, right? Your Honor, I think Hawkins did rely primarily on the case agent's testimony. Here though, the two case agents, Combs and Spitzer, provided the majority of the testimony in this case. And I think Spitzer's testimony is the one that is most problematic and most crosses the line drawn in Hawkins, and his testimony is over 200 pages of about a four-day trial. And so the other testimony you have is from a few other agents that basically testify to traffic stops, testify to observing trash pulls, and their testimony compromises about 200 pages by themselves. And then you have Combs' testimony, who we've also alleged is violating the rule in Hawkins, and her testimony is about 90 to 100 pages as well. So the testimonies from the case agents that here is improperly mixing opinion, expert testimony, and fact testimony is a great deal of the evidence in the case. Were the agents here qualified as experts? Did the district court say that they were experts? No, Your Honor, they were not. Okay, that's also different than Hawkins, right? I mean, in Hawkins, the district court instructed the jury that they were to consider the case agent an expert. That's correct, Your Honor. That is what happened in Hawkins, but that's not decisive. I know that's what the government argued, is that there's no Hawkins error here because they weren't testifying as experts. But Hawkins itself, first of all, said that the testimony was improper either way, because opinion testimony, quote, whether offered by a lay witness or expert, is not properly received merely to tell the jury what result to reach. But Hawkins also says that we look to the record as a whole to determine whether the agent was testifying as an expert or not. And there's also the advisory committee note to Rule 701 that expressly states that parties can't evade the requirements of 702 by proffering an expert in lay witness clothing. So any part of a witness's testimony that's based upon specialized knowledge falls within 702. And this Court has held in cases like United States v. Holt, that's 777, the F-3rd, 1234 from 2015, that testimony like that that Agent Spitzer was providing about the operations of narcotics dealers and interpreting code words is expert testimony. And also here, specifically with Agent Spitzer, you have him listing his qualifications at the beginning of his testimony for five pages of transcript. He goes through his training and experience in 18 years of narcotics investigations. He discussed 3,000 hours of training that he had received and working everything from street corner deals to cartels. He describes his experience in identifying narcotics and also describes his training in that. But again now, I mean, you know, just to get to the heart of the matter, since there was no contemporaneous objection, and if there was an error, we would review it based on plain error review, you're going to have to convince us that his substantial rights were violated. And I'm having trouble figuring out how you're going to do that, given all the overwhelming evidence of guilt in the case, including his girlfriend's testimony against him at the trial. She says, while he did not cut drugs, he sometimes delivered them. There was a lot of cell phone evidence from other conspirators. There was testimony from DEA agents, Georgia police officers. There was video surveillance. That's a lot of evidence. So how are his substantial rights affected? Well, Your Honor, I think I have a few answers to that. First is that we really have to show a reasonable probability of a different result, not that, you know, the evidence wouldn't have been sufficient absent this testimony. So the harm here is kind of the same as in Hawkins, where the jury is hearing an agent's opinion based on both his expertise and the total investigation. And there's a risk that they just deferred to the agent's opinion, and his knowledge of the pertinent facts was more extensive. There's more than just the agent's opinions, though. There's a lot of other evidence against him. There's cell phone evidence, video evidence, his girlfriend's testimony. And, Your Honor, as to the girlfriend's testimony, you know, I think it's inherently suspect. And the jury would view that with suspicion because, you know, she's a cooperating witness. She's given immunity for this testimony. They heard that her phone actually had a lot of evidence of her participation. So Mr. Mateo's defense was basically that he was kind of, it was a mere presence defense, essentially. That he was living at the house, and that his co-defendant, Mr. Boise Mondragon, ever, and his girlfriend may have been participating in this conspiracy. But he was just living there, may have been a methamphetamine user, but was not actually a participant in this wider conspiracy involving 500 grams or more. And so when you have the case agent, here's Spitzer, being asked, you know, based on your expertise and knowledge, and what you've seen in this investigation, being asked to mix those two, and his response is, well, the defendant is well-versed in drug trafficking. And he's not an amateur, a professional. Then that goes straight to his mere presence defense here. And you also have the agents, both Combs and Spitzer, saying, this is a stash house. And when he's saying that this is just the apartment that I'm living in, them saying that it's a stash house and it serves no other purpose just goes to the heart of his defense. And so the testimony there is incredibly damaging. And I think that the other evidence you have, you know, is basically you see the trash pools, and there's, of course, internet explanations for that. You know, that doesn't necessarily state that he was participating in a drug conspiracy. It may say that he was disposing of trash in a way that was suspicious, but that doesn't mean he had agreed to participate in methamphetamine distribution conspiracy. And so I think that the evidence is not necessarily overwhelming if you take away this kind of testimony from the case agents where they're drawing conclusions. And then the text messages that were being interpreted are also coming through Agent Spitzer. So that kind of goes to the Hawkins problem we have here, that he's being allowed to both interpret these text messages to say they're about drugs and draw conclusions about the overall conduct. The government, in its brief, says this case is more like United States versus Emanuel than it is like United States versus Hawkins, where the court found that the contested testimony, quote, was merely cumulative and was not essential to the jury's verdict, close quote. Why isn't this case more like United States versus Emanuel? Well, Your Honor, I think it's more like in Hawkins because it's not just cumulative. It's not just drawing conclusions that the jury could have reached with that, which I think is, you know, the major problem in Hawkins. It's also adding to that by Spitzer saying that, you know, not only does this show that, you know, there was methamphetamine being produced, according to my expert testimony, but it means that he had knowledge of it. He was a professional, not an amateur. He was well-versed in the drug trade. And I think drawing that kind of conclusion makes this case different and is incredibly damaging because the jury can simply just defer to that testimony without having to weigh the evidence on their own. And so it's taking away the jury's function here, which is, you know, in the end to decide whether or not he was in the drug trade. And the agent is just answering that question. And it's being specifically elicited by the government. It's not a case where the case agent is just going off the rails and saying, drawing these conclusions. He specifically asked based on your training and experience and your observations in that day, did you draw any conclusions about the defendant? And that's exactly what Hawkins says that they should not do, your honor. So, I see that's my time. Thank you. All right. Thank you, counsel. Mr. Mann? Thank you, your honors. May it please the court. I'm Tyler Mann, counsel for the government. I was also trial counsel in U.S. v. Mateo. The standard here is plain error. This is the first time this morning that appellant has acknowledged that and made some attempt to meet that standard. It was not raised in the appellant's brief. There was no reply brief. And the defendant has, excuse me, the appellant has made no effort to meet his burden under plain error. The opinion testimony here was proper lay opinion testimony under Rule 701. And to be proper under 701, that testimony had to have been based on the witness's perception. It had to be helpful to the jury. And it had to not be based on scientific, technical, or other specialized knowledge. There are six categories of testimony argued in appellant's brief that are at issue here. And that's important because though appellant's counsel identified how long the witness's testimony was in total, the challenge testimony is in the range of six to ten pages total in the transcript. And that's a key difference with Hawkins. It's on the defendant to provide on-point precedent here, and Hawkins is not that. The court has already identified some differences with Hawkins, but if I might elaborate a little bit. In Hawkins, there was a single juror, excuse me, a single witness who spent quite a bit of time, the bulk of the government's case, testifying. He was, quote, this is a quote from the appellate court, paraded before the jury as an expert. That did not happen here. The prosecutor repeatedly asked for expert testimony. I was trial counsel. I never asked for expert testimony from either of these witnesses. The court instructed the jury that the witness was permitted to testify based on his experience and knowledge, quote, with respect to technical matters. Nothing similar happened here. The jury was given a pattern instruction on expert testimony in Hawkins. The witness did, as appellant counsel noted, as the court noted, mix expert testimony and fact testimony. That did not happen here. And as I said, that witness's testimony was the bulk of the government's case. Hawkins simply is not on point to the case here. The other case cited by appellant is Chau, which is also not applicable here. Chau is a case in which defendant attempted to bring in opinion testimony on the knowledge of the people in a particular region of Guatemala as to marijuana and another person to testify on the biodiversity of plant life in Guatemala, all in an attempt to make the case that the defendant did not know what marijuana was. That testimony was excluded because it was not based on the witness's rational perception in that case. Here, the six categories of testimony were all based on the agent's perception. Well, these two agents, you put Agent Combs and Spitzer on the stand and they testified about what various other agents witnessed rather than what they witnessed themselves. That's clearly hearsay. That's clearly hearsay. No? I'm sorry, Your Honor. Why isn't that hearsay? No, in this case, Judge, the challenge testimony, which appellant counsel did not address this morning, was from Agent Combs, and she described being in the moment, in the field, during an investigation and receiving information from other agents, which immediately directed her actions. That is non-hearsay because it drove her decisions and her investigative steps. And she explained what she did, what she heard and what she did. It wasn't that she heard something weeks before and then did something, which might well be okay. This was in the moment, in the field. Which is another difference from Hawkins, right? The guy in Hawkins was just like reading text messages that were sent back and forth between people and there was no, he was never involved in some kind of active investigation that was going on. That's correct, Judge, whereas Agent Combs identified specific incidents in which she received information and acted on it. Because they were all at like an apartment complex or around there when this was going on. Am I understanding that right? That's exactly right. There are roughly, there are two general categories of the non-hearsay that came in. In two of the incidents, agents were at the apartment complex or surrounding areas. Agent Combs testified to hearing that trash bags came out of the house and that a person, in one case, Mr. Boies Amondegon, in another case, Mr. Mateo, put those bags into a vehicle and left the location to be disposed of somewhere else. She used that information to perform surveillance. Then an agent told her that bags had been retrieved and were being taken to another location to be searched. She used that information to go to that location to help in the search of the bags. And finally, Agent Spitzer told her that he was viewing electronic surveillance and that one of the targets was moving. She used that information to perform in-person surveillance. And it's significant that I mention Agent Spitzer there because in each of these instances of non-hearsay testimony, the proponent of that information, excuse me, the provider of that information to Agent Combs testified at trial. And then when Combs says in his brief that it wasn't clear who was who, that's just not the case. The witnesses described giving information to Agent Combs. She described giving that information. Those were Agent Vong and Agent Spitzer. And they testified and were subject to cross-examination. So there is no confrontation clause here, issue here, both because it was non-hearsay and because the witnesses testified. But I want to move on on the lay opinion testimony to the third prompt. There was no error. That error was not plain. But even if there was plain error, it did not affect the defendant's substantial rights because of the mountain of additional evidence that came in at trial. The judge touched on some of this evidence, but I would like to elaborate, if I may. If all of the opinion testimony were excluded, if all of the evidence were excluded, Mr. Mateo, at the time of his arrest, in which he said he lived in the apartment, he was the caretaker of the apartment, and he made deliveries out of the apartment, the results of the search of the apartment would have come in. Multiple kilograms of methamphetamine, much of which was found in space in the apartment controlled by Mr. Mateo and his girlfriend, a bag with multiple kilograms packaged as if they either had just come in or were on their way out, a pot of liquid methamphetamine in Mr. Mateo's bathroom, drying under the counter, mixing agent under that same counter, and multiple quantities of methamphetamine spread around Mr. Mateo's bedroom. Identifying government documents for Mr. Mateo in that bedroom, mixing agent, packaging materials, a scale, and other drug paraphernalia. Ms. Corral Torres' testimony would still have come in, that she moved into the apartment with Mr. Mateo, immediately knew that methamphetamine was being packaged and distributed out of the location, that she heard repeated conversations about drug distribution between Mr. Mateo, the co-defendant, Mr. Boise Mondragon, and the two men who owned the meth that was being distributed out of the apartment, that she did deliveries with Mr. Mateo, she saw him deliver quantities of methamphetamine to customers, receive cash, count that cash, and return it to the apartment, that she heard a conversation about methamphetamine being imported from Then there's a video that came in from Mr. Boise Mondragon's phone, not from Mr. Mateo's, of a person cutting open a tire and removing parcels out of that tire. Ms. Corral Torres testified that she heard Mr. Mateo's voice in that video, which when paired with the conversation she heard about methamphetamine being imported into the country in tires was very strong evidence of his guilt. The trash bags would still have come in, and the evidence therein, which included meth, amphetamine, cutting agent, packaging materials, and empty buckets of cutting agent as well. So even if all the challenged evidence was stricken, all of that would have come in and is overwhelming as to Mr. Mateo's guilt. As to the fairness of the proceedings, the fourth prong of plain error, not only was that evidence insubstantial to the verdict, but the disputed lay opinion testimony came in anyway. The categories of the drug traffickers going to the disposal of trash and intending to avoid the dumpster in their apartment complex and going somewhere else, Ms. Corral Torres testified that they repeatedly received explicit instructions from the owners of the methamphetamine to take the trash from the apartment elsewhere, to separate it from the apartment for the explicit purpose of hiding evidence that would have come in anyway. Testimony that the apartment was a stash location. The evidence from the apartment would have come in, which, as I just described, made it clear that it was a stash location. That is a location in which methamphetamine was being prepared for distribution and from which methamphetamine was being distributed. Testimony that a box carried into the apartment contained methamphetamine. The evidence of what was observed in person that day, that Mr. Boisimondragon left the apartment with a gift bag, performed a meeting that agents didn't witness, immediately met with co-defendant Angel Talavera and provided a cardboard box containing multiple kilograms of methamphetamine, then returned back to the apartment and carried a similar box of a similar appearance and weight into the apartment, paired with Ms. Corral Torres' testimony that bulk quantities of methamphetamine came into the apartment, was cut there, and then was distributed. So, even if there is error in admission of this opinion testimony, it came in otherwise and therefore it should be affirmed. His co-defendants were equally as culpable or more culpable, but Judge Thrash hammered in that sentencing. What did he get, 210 months? I would not refer to it as hammering, Your Honor. He received a below-guideline sentence, he possessed a weapon, and he did not receive an acceptance of responsibility benefit. And Judge Thrash laid that out on the record and he explained why he was making the decision that he did. He did get a higher sentence, but the judge explained why that happened. Before you sit down, would you explain, would you answer the argument about the lack of the drug quantity on the sentencing issue? I will, Judge. This obviously was an issue at sentencing, we addressed it at length, and the judge did make particularized findings. On page 18 of document 251, after receiving evidence from the government, the court said, quote, he described his evaluation of the evidence and how he understood it, and he said that the deal, quote, was part of the overall conspiracy and that Mateo was acting in his role as one of the residents of the Stash House, and that he arrived there to look after it while Mr. Boisomondragon went out to do the drug transaction with Mr. Talavera. That is sufficient, sufficiently particularized findings by the judge to tie that activity to the jointly undertaken activity, finding that it was in furtherance of that activity and that it was reasonably foreseeable to Mr. Mateo, which means that it was properly attributed to Mr. Mateo under Section 1B1.3A1B of the Guidelines. If you have no other questions, I appreciate your time. All right. Thank you, Counsel. Ms. Strickland, you've reserved some time for rebuttal. Thank you, Your Honor. I do want to address a few points that the government made about the Hawkins issue. I think the main way that the government has tried to distinguish Hawkins here is by saying that the case agents here were not paraded in front of the jury as experts and that the government never asked for expert testimony. But I think based on the record, that's just not the case. I know I discussed initially that Agent Spitzer discussed his qualifications for five pages before being asked any questions, and then he gave expert testimony. So he was allowed to interpret code words. He described street values of drugs. He described the processes of making or washing meth, the usual practices of drug traffickers, units of measurements and large-scale operations. And when the government asked questions, it's correct to get, they did not say, in your expert opinion, but Rule 702 says an expert is someone qualified by knowledge, skill, experience, training, or education. And what they did say, it's based on your training and experience. That's asking for expert testimony, and the jury surely recognized it as such, even if they don't say, you're an expert. So what the government has done is exactly what the commentary to Rule 701 that I discussed previously prohibits, which is putting someone up on the witness stand and treating them as an expert, but just not saying, judge, can we qualify them as an expert? It still has the same impact here. And it still has the same problem as identified in Hawkins, where you're mixing that expert and fact testimony. And the government, in addressing the third prong of plain error review, talked about how, well, maybe this wasn't harmful because the things about the trash dumps and the stash house also came in through the co-defendant, Ms. Corral-Torres. But that's also part of the problem here that we have identified in Hawkins, is that you have a witness in Ms. Corral-Torres that has obvious credibility problems. She has, the jury has been told that she's been granted immunity in federal court and that her testimony can't be used against her in state court. She's hoping for some kind of deal in state court. And then she also has a lot of evidence implicating her as part of the drug conspiracy, including all the items found on her own phone and the fact that she admitted to participating in other drop-offs that Mr. Mateo was not even present for. So the problem here is that you have the expert coming in and putting an expert gloss on the testimony from this witness. So she has credibility problems. But then you also have an expert coming in and say, well, yeah, this is true. I mean, this is a stash house, in my expert opinion. And so what she's saying here is also true. And so it just gives her testimony that added credibility because it's coming from an expert witness. And so that's really the problem is that the two are kind of combining to verify each other. And that is what Hawkins says is part of the problem with mixing expert and fact testimony here. And so just the fact that Ms. Corral-Torres ended up testifying about that doesn't fix the problem here. And then I also wanted to touch on the fourth prong of plain error review because I think we do get there. First of all, the Supreme Court has instructed that once the first three conditions are met, then the court should exercise its discretion and correct the forfeited error here. But also, Hawkins itself cites a Sixth Circuit case, Lopez Medina, and quotes there. We conclude that permitting police officers to testify as experts in their own investigations and give opinion testimony on the significance of evidence that they collected, absent any cautionary instruction, threatens the fairness, integrity, and public reputation of judicial proceedings, regardless of whether the defendant is actually innocent. So I think we've established that it was error here. It's plain under Hawkins. It affects his substantial rights, especially because Ms. Corral-Torres' testimony cannot come in and cure that. And, you know, Hawkins instructs us that we've met the fourth prong here. So I thank the court for their time. All right. Thank you, Ms. Strickland. Mr. Mann.